IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**TERESA WILMOT,**

    Petitioner,

vs.
                                              **CASE NO. 4:05cv498-MP/WCS**

**M. L. RIVERA, Warden, et al.,**

    Respondents.

                                    /


## REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by Teresa Wilmot pursuant to 28 U.S.C. § 2241. Docs. 1 (petition), 2 (memorandum), 6 (clarification of claims), and 9 (supplement). Respondents filed an answer. Doc. 8. Petitioner filed a reply. Doc. 16.

**Petitioner's claims**

This petition concerns disciplinary action imposed upon Petitioner. Petitioner asserts that on April 3, 2005, an officer found a "flyer" (a paper with a message on it) on the perimeter fence line at FCI Tallahassee. Doc. 2, p. 2. The flyer encouraged prisoners to boycott the commissary and laundry room. Doc. 1, Ex. C, Disciplinary Hearing Officer Report, p. 3; doc. 1-4 (on the electronic docket), p. 3. A copy of the flyer

is attached to doc. 8, Ex. 3; doc. 8-4, p. 5.  Petitioner alleges that three prisoners (Martha Crowe, Norma Canipe, and Lawanna Null) said that Petitioner and another prisoner, Debbie Humphries, prepared the flyer.  Doc. 2, p. 2.

Petitioner was charged with a violation of code 212, engaging in or encouraging others in a group demonstration.  *Id*., p. 3.  Petitioner denied knowledge of the flyer.  *Id*.  The "informants" did not testify at the hearing, but provided evidence to the investigator, Lieutenant Marlon Stanford, whose written report was considered.  *Id*., p. 4.  Petitioner lost 27 days of good conduct time and was sentenced to 30 days in disciplinary segregation.  Doc. 1, Ex. C, Disciplinary Hearing Officer Report, p. 3; doc. 1-4 (on the electronic docket), p. 3.

Petitioner claims that her due process rights were violated because the hearing officer did not make an independent determination of the credibility of the "informants."  *Id*.  Petitioner cites <u>Kyle v. Hanberry</u>, 677 F.2d 1386 (11th Cir. 1982) for this argument.  Petitioner also claims a violation of due process because the hearing officer found her guilty of the offense on insufficient evidence.  *Id*., p. 4.  She alleges that she was not permitted to read the statements that informants made to the investigator.[1]  Doc. 6, p. 1.  She seeks restoration of 27 days of good conduct time, release from administrative detention, and expungement of a disciplinary report from her prison record.[2]

---

[1] It is unclear how Petitioner now alleges that the informants were Martha Crowe, Norma Canipe, and Lawanna Null.  However, Respondent has not contested Petitioner's assertion that she was never permitted to read the statements made to the investigator, and the statements are not in this record.

[2] Petitioner also requests that a notation be made of unprofessional conduct by the officers involved and that she be given a polygraph test to prove her innocence.  Such relief is not available pursuant to 28 U.S.C. § 2241.

**Whether the court has jurisdiction**

The Government argues that since Petitioner is currently confined in FCI Danberry, Connecticut, this court lacks *in personam* jurisdiction over Petitioner and Respondent. Doc. 8-1, p. 2. A petition for writ of habeas corpus shall name "the person who has custody over him." 28 U.S.C. § 2242. The person having immediate custody of the petitioner is the proper respondent. Rumsfeld v. Padilla, 542 U.S. 426, 434-435, 124 S.Ct. 2711, 2717, 159 L.Ed.2d 513 (2004). However, if the petition is properly filed in the district of the immediate custodian, the district court retains jurisdiction to adjudicate the petition even though the Government transfers the prisoner. Ex parte Mitsuye Endo, 323 U.S. 283, 305-306, 65 S.Ct. 208, 220, 89 L.Ed. 243 (1944).

> Thus, *Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.

Rumsfeld v. Padilla, 542 U.S. at 441, 124 S.Ct. at 2721.

Under the "mailbox rule," a pleading is considered filed by an inmate on the date it was delivered to prison authorities for mailing, which (absent contrary evidence) the court assumes is the date he signed it. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001). The burden is on prison officials to prove the date of mailing, and absent evidence to the contrary the court assumes the motion was delivered to prison authorities on the date he signed it. *Id*.

Petitioner noted a change of address to FCI Danberry, Connecticut, effective on December 20, 2005. Doc. 3. The petition, doc. 1, was file stamped by the Clerk as having been received at 12:35 p.m. on December 21, 2005. The petition lacks a date or

a certificate as to when it was submitted to prison officials for mailing. *Id.*, p. 7. The memorandum states that Petitioner was at FCI Tallahassee awaiting transfer to FCI Danberry when the memorandum was prepared, and it was also docketed on December 21, 2005. Doc. 2. It, like the petition, is not dated. The Government has shown that Petitioner was in transfer status at FCI Tallahassee on December 20, 2005, and admitted to an "in-transit facility" on the same date at 10:28 a.m. Doc. 8, Ex. 2. She was "designated" as assigned to FCI Danberry at 4:48 p.m. on December 21, 2005. *Id.*

From this circumstantial evidence, it is concluded that Petitioner was still in custody at FCI Tallahassee when she submitted her petition to prison authorities for mailing. This court could not have received the petition at 12:35 p.m. on December 21, 2005, if it had been mailed from FCI Danberry after 4:48 p.m. that same day. It had to have been mailed from FCI Tallahassee before Petitioner left that institution. The court has jurisdiction of the petition.

**Legal analysis of Petitioner's claims**

Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) held that because Nebraska statutes created a liberty interest in the retention of good time credits, deprivation of good time for disciplinary infractions in a state prison required minimal due process.[3] The Court said that minimal due process required written notice of the claimed violation at least 24 hours in advance of a hearing, an opportunity to call

---

[3] It is not disputed by Respondent that Petitioner in this case was entitled to procedural due process for the loss of the good time. She was not, however, entitled to procedural due process for the imposition of the 30 days in disciplinary confinement. Sandin v. Conner, 515 U.S. 472, 485, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995).

witnesses and present documentary evidence if not "unduly hazardous to institutional safety or correctional goals," assistance from a fellow inmate or staff where the complexity of the issue makes it unlikely that the inmate will be able to collect and present necessary evidence, a degree of impartiality of the hearing committee, *and a written statement of the factfinders "as to the evidence relied on" and the reasons for their action*. 418 U.S. at 564-571, 94 S.Ct. at 2978-2982 (emphasis added). One of the purposes for requiring that there be a written statement "as to the evidence relied on" is that:

> Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others. It may be that there will be occasions when personal or institutional safety is so implicated that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission. Otherwise, we perceive no conceivable rehabilitative objective or prospect of prison disruption that can flow from the requirement of these statements.

418 U.S. at 565, 94 S.Ct. at 2979 (footnote omitted). "Ordinarily a mere conclusion that the prisoner is guilty will not satisfy this requirement [that there be a written statement as to the evidence relied on]." Saenz v. Young, 811 F.2d 1172, 1174 (7th Cir. 1987) (citations omitted).

Minimal due process also requires that "the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985).

> This standard is met if "there was some evidence *from which the conclusion of the administrative tribunal could be deduced*. . . ." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility

of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence in the record that could support the conclusion* reached by the disciplinary board.

472 U.S. at 455-456, 105 S.Ct. at 2774 (emphasis added, citations omitted).

In his written statement, the Disciplinary Hearing Officer (DHO) first set forth summaries of statements by witnesses that Petitioner had asked to testify on her behalf. These witnesses, Kristie Goldstein, Teresa Cowart, and Elaine Shimer, gave statements tending to show that Petitioner was innocent of the charge. Doc. 1, Ex. C, pp. 1-2; doc. 1-4, pp. 1-2. In the section provided for setting forth the "evidence" relied upon, the DHO said:

> This finding hinges upon credibility. The inmates who identified inmate Wilmot as a participant, statements [sic] are deemed more credible *by the Investigating Lieutenant* as they either played no part in, disagreed with this planned group demonstration or played a part and were forthcoming in their and other participants roles in this planned demonstration.
>
> *The DHO considered as evidence statements from other inmates contained in the in-depth Investigative Report of Lieutenant Stanford dated June 8, 2005*. In this report, Lieutenant Stanford noted inmate Wilmot played a pivotal role in soliciting other inmates to join in the boycott planned for April 11, 2005. . . .

*Id.*, p. 3 (emphasis added). The DHO also said that he found that Lieutenant Stanford had not caused the other prisoners to lie because his "credibility has ben [sic] established by other reports and memos he has written." *Id.* By affidavit dated July 11, 2006, attached to the incident report, Hearing Officer Davis provides much the same summary of the "evidence" upon which he relied to find Petitioner guilty as charged. Doc. 8. Ex. 3, pp. 3-4; doc. 8-4, pp. 3-4. Critical to this court's review, however, is that neither the investigative report of Lieutenant Stanford nor any statement of the witnesses he found to be credible is in this record.

Case No. 4:05cv498-MP/WCS

The issue presented is whether this description "as to the evidence relied on" satisfies <u>Wolff</u> and whether this record contains "some evidence from which the conclusion of the administrative tribunal [can] be deduced" as required by <u>Hill</u>. To summarize, the "evidence" of record here is that there were some witnesses interviewed by Lieutenant Stanford, apparently thought to be credible, who "identified inmate Wilmot as a participant."

This is merely a conclusion that Petitioner was guilty as charged. It is not "some evidence" as intended by <u>Hill</u> or a statement "as to the evidence relied on" as intended by <u>Wolff</u> because what those witnesses actually said is not described or explained. There is nothing in this statement of reasons explaining what Petitioner is said to have done to become a "participant," which is simply a conclusion of her guilt. Did Petitioner direct others to prepare the flyer, or did Petitioner create the flyer herself? If Petitioner did neither of these things, did Petitioner carry the flyer to the fence? If Petitioner did none of these things, did Petitioner affix the flyer to the fence? One might have been guilty of the charge of engaging in or encouraging others in a group demonstration in a myriad of different ways. Without knowing what the eye witnesses said, the conclusion of Hearing Officer Davis cannot be deduced as required by <u>Hill</u>, and the protection of <u>Wolff</u>, that the inmate not be left "at a severe disadvantage in propounding his own cause to or defending himself from others," is denied. That Lieutenant Stanford decided that the witnesses were credible is not evidence from which the court might deduce the decision by Hearing Officer Davis about the guilt or innocence of Petitioner for the specific infraction at issue.

This analysis resolves the petition. Petitioner's procedural due process rights were violated. The court should issue the writ and order that the disciplinary action against Petitioner be expunged from her record and her good conduct time restored.[4]

Before concluding this report and recommendation, however, a discussion of the primary case cited by Petitioner is needed. In 1982, the Eleventh Circuit decided Kyle v. Hanberry, 677 F.2d 1386 (11th Cir. 1982). This, too, was a Bureau of Prisons disciplinary case, decided with the benefit of Wolff but several years before Hill. In Kyle, a prisoner had been accused of assaulting another prisoner. 677 F.2d at 1388. The Inmate Disciplinary Committee (IDC) "curtly described the specific evidence relied on to support its findings as follows: Officer's statement that Kyle was identified as assailant. Confidential report which identified Kyle as assailant. Investigation and attached memorandum." Id. "The investigator's report was unavailable to Kyle and he was unaware of its contents." Id. The court held that:

> due process required the IDC in Atlanta to make an independent investigation into the credibility and reliability of informants if it relied on those informants to take disciplinary action against inmate Kyle. For purposes of judicial review, the record must contain some facts from which a court can reasonably conclude that the IDC investigated and found that the informant was credible or that his information was reliable.

677 F.2d at 1392. The court said, however, that the need to inquire into the reliability of informants "may be diminished (or even satisfied) where there is corroborating physical evidence of the information provided." 677 F.2d at 1390.

---

[4] The defect here is that the written statement of the DHO fails to set forth the evidence relied upon, as required by Wolff, and therefore fails to contain "some evidence" as required by Hill from which the decision may be deduced. The credibility of the missing witnesses has not been independently reviewed by this court, nor could it be since the record is devoid of such evidence.

Kyle was distinguished by the post-Hill decision of Young v. Jones, 37 F.3d 1457 (11th Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995). Young noted that in Kyle, "unlike the present case, the disciplinary committee did not consider any corroborating evidence, but relied solely upon the officer's statement that a confidential informant identified Kyle as the assailant."[5] 37 F.3d at 1459. The court also noted that Kyle had said that the need to determine the reliability of the informant would be diminished or satisfied if there was corroborating physical evidence. *Id*. The court then cited the passage from Hill set forth above. *Id*. The court found that the following satisfied the "some evidence" standard of Hill: an officer said under oath that he had information from a previously reliable confidential source that Young was involved in the disciplinary infraction (attempting to escape); the officer said that several sources said that the second prisoner attempting to escape had a salt and pepper beard; Young had a salt and pepper beard; and one source said that Young was seen in the yard shortly before the escape attempt. 37 F.3d at 1458-1459.

A third case is Williams v. Fountain, 77 F.3d 372 (11th Cir.), *cert. denied*, 519 U.S. 952 (1996). Williams, a Georgia state prisoner, was accused of assaulting another prisoner with a pool cue. 77 F.3d at 373. The court there acknowledged that Hill had been decided, but cited Kyle as still good law:

> Although inmates subject to disciplinary actions may be denied the right to identify and cross-examine adverse witnesses when prison officials are concerned about reprisals, *Wolff v. McDonnell*, 418 U.S. 539, 566-70, 94 S.Ct. 2963, 2980-81, 41 L.Ed.2d 935 (1974), due process requires that the

---

[5] This is not entirely correct. While not mentioned by the IDC in its findings, and not disclosed to the prisoner, the investigator's report "indicated that a pair of bloody fatigue pants had been found in Kyle's cell." 677 F.2d at 1388.

record of disciplinary proceedings document some good faith investigation and findings as to the credibility of confidential informants and the reliability of the information provided by them. *Kyle v. Hanberry*, 677 F.2d 1386, 1390-91 (11th Cir.1982).[4]

> [4] Other circuits have agreed with *Kyle* in requiring prison disciplinary committees to conduct and document evaluations of confidential informants' credibility. *See Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir.1987); *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir.1985), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *Helms v. Hewitt*, 655 F.2d 487, 502 (3d Cir.1981), *rev'd on other grounds*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *see also Russell v. Coughlin*, 774 F.Supp. 189 (S.D.N.Y. 1991) (noting that although the Second Circuit has not ruled on the issue, numerous district courts within that circuit have required inmate disciplinary committees to comport with the requirements of *Kyle* ).

77 F.3d at 374-375. In Williams, as here, the disciplinary body said that it had not relied upon confidential sources yet it adopted the investigator's findings, which in turn had relied upon confidential witnesses. 77 F.3d at 375. Under these circumstances, said the court, "the committee, in determining guilt, indirectly relied upon the confidential informant statements, the reliability of which had never been established." *Id.* The court would, therefore, have applied Kyle to find a violation of procedural due process but for the fact that there was "some evidence" of the prisoner's involvement in the assault other than testimony from the confidential witnesses. The prisoner, Williams, had admitted he had been in a fight with the victim but denied that a pool cue was involved. *Id.* and n. 5. Based upon this independent admission, and citing Hill and the "some evidence" rule, the court found no due process violation. 77 F.3d at 376.

In summary, while Hill admonishes that a district court must not independently try to determine the credibility of witnesses or weigh the evidence, Kyle still appears to be

good law.  If the disciplinary hearing officer or committee relies upon statements from confidential witnesses, and in the absence of some independent evidence from which the conclusions of the officer or committee can be deduced, an adequate statement of the evidence relied on as required by <u>Wolff</u> must include "some good faith investigation and findings as to the credibility of confidential informants and the reliability of the information provided by them."  <u>Williams v. Fountain</u>, 77 F.3d at 375.

In this case, the Disciplinary Hearing Officer relied upon the investigating officer's determination of the credibility of the witnesses and set forth no evidence as to why the witnesses adverse to Petitioner were credible.  This violated Petitioner's procedural due process rights.  For this reason, in addition to the failure of the Hearing Officer to set forth the specific evidence upon which he relied (by indicating what the witnesses said), the writ should be granted.

Accordingly, it is **RECOMMENDED** that the court **GRANT** the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241, doc. 1, **ORDER** that the disciplinary action be expunged from Petitioner's record and the good time credits that were forfeited be restored.

**IN CHAMBERS** at Tallahassee, Florida, on July 31, 2007.

                                               s/   William C. Sherrill, Jr.
                                               **WILLIAM C. SHERRILL, JR.**
                                               **UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 4:05cv498-MP/WCS